Ortiz-Franco v. Holder

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: October 9, 2014     Decided: April 1, 2015)

Docket No. 13-3610

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ELENILSON J. ORTIZ-FRANCO

Petitioner,

- v.-

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Before:          JACOBS, LOHIER, and DRONEY, Circuit Judges.

Elenilson J. Ortiz-Franco petitions for review of an order of the Bureau of

Immigration Appeals, entered August 30, 2013, which affirmed the decision of

Immigration Judge Noel A. Ferris denying Ortiz-Franco deferral of removal

under the Convention Against Torture ("CAT"). We lack jurisdiction to consider

the petition for review because the jurisdictional limitations set forth in 8 U.S.C.

§ 1252(a)(2)(C) and (D) apply when an otherwise removable alien is denied

deferral of removal under the CAT, and Ortiz-Franco raises no colorable

constitutional claims or questions of law. Accordingly, the petition for review is

DISMISSED. Judge Lohier concurs in a separate opinion.

> LEE P. GELERNT, American Civil
> Liberties Foundation, Immigrants' Rights
> Project (with Dror Ladin, American Civil
> Liberties Foundation, Immigrants' Rights
> Project and Genet Getachew, Law Office of
> Genet Getachew), New York, N.Y., for
> Petitioner.

> JESSE M. BLESS, Trial Attorney, United
> States Department of Justice, Civil
> Division, Office of Immigration Litigation
> (with David B. Bernal, Director, Stuart F.
> Delery, Acting Associate Attorney General
> and Anthony C. Payne, Senior Litigation
> Counsel), Washington, D.C., for
> Respondent.

DENNIS JACOBS, Circuit Judge:

Elenilson J. Ortiz-Franco petitions for review of an order of the Bureau of

Immigration Appeals ("BIA"), entered August 30, 2013, which affirmed the

2

decision of Immigration Judge Noel A. Ferris ("IJ"), denying all relief, including relief on the sole basis that is the subject of this appeal: deferral of removal under the Convention Against Torture ("CAT"). We conclude that we lack jurisdiction to consider this petition for review because, when an otherwise removable alien is denied deferral of removal under the CAT, our jurisdiction is limited by 8 U.S.C. § 1252(a)(2)(C) and (D) to review of colorable constitutional claims and questions of law--and Ortiz-Franco raises none.[1]

Ortiz-Franco, a native and citizen of El Salvador, conceded before the IJ that he was removable as an alien present in the United States without being admitted or paroled, i.e., illegally, and as an alien convicted of a controlled substance violation and a crime of moral turpitude. His contention is that, if he is returned to El Salvador, members of La Mara Salvatrucha street gang ("MS-13") would torture and kill him because of information he provided to federal prosecutors in a proffer session.

---

[1] Section 1252(a)(2)(C) provides: "Notwithstanding any other provision of law[,] . . . no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a [covered] criminal offense." 8 U.S.C. § 1252(a)(2)(C). Section 1252(a)(2)(D) provides a limited exception to this jurisdictional restriction for a petition for review that raises "constitutional claims or questions of law." Id. § 1252(a)(2)(D).

Ortiz-Franco applied for asylum, withholding of removal, and deferral of removal under the CAT. The IJ ruled that his witness tampering conviction rendered Ortiz-Franco ineligible for asylum and withholding of removal, and that he did not sustain his burden of demonstrating entitlement to CAT relief because he did not establish that it was more likely than not that he would be subject to torture in which the Salvadoran government would acquiesce. The BIA affirmed and dismissed the appeal. The petition presented to this Court challenges only the denial of deferral under the CAT.

## BACKGROUND

Ortiz-Franco entered the United States illegally in 1987. Between 1992 and 1996, he was convicted of: criminal possession of a weapon in the third degree, a class D Armed Violent Felony under New York law; attempted petit larceny; and possession of a controlled substance. See N.Y. Penal Law §§ 265.02, 110, 155.25, 220.03.

In July 2005, the Department of Homeland Security ("DHS") served Ortiz-Franco with a Notice to Appear in removal proceedings, alleging that he was removable as an alien present in the United States without being admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). At an initial hearing, Ortiz-Franco

4

conceded removability on the charged ground. In October 2005, DHS additionally alleged that Ortiz-Franco was subject to removal as an alien convicted of violating a law related to a federally controlled substance. See id. § 1182(a)(2)(A)(i)(II). A superseding charging document, filed in April 2006, charged that Ortiz-Franco was subject to removal as an "alien convicted of . . . a crime involving moral turpitude." See id. § 1182(a)(2)(A)(i)(I). Ortiz-Franco conceded removability on these additional grounds.

This petition arises from an order issued years later, following intervening events recounted below.

Ortiz-Franco joined MS-13 in 2008. He and other members were later indicted on federal charges in connection with a fight with a rival gang. Ortiz-Franco attended a proffer session in which he stated that: his co-conspirators were members of MS-13; they started the fight "and were displaying MS-13 hand signs and saying 'La Mara, La Mara,'"; one of the people they were fighting was a former MS-13 member; Ortiz-Franco and his co-conspirators had snorted cocaine before the fight; and certain of his co-conspirators provided "muscle" for a drug dealer. The government did not credit Ortiz-Franco's account as "completely

5

truthful and accurate," declined to hold further proffer sessions, and offered him no cooperation agreement.

Since Ortiz-Franco's proffer statements might have been admissible at trial, the government gave copies to his co-defendants. Thereafter, defense counsel told the government that Ortiz-Franco had "concerns about being deported to El Salvador, because of the MS-13's perception, albeit inaccurate, that he cooperated with the government."

The case against Ortiz-Franco expanded into a prosecution in which defendants were charged with (inter alia) murder, racketeering, conspiracy to distribute cocaine, and witness tampering. Ortiz-Franco ultimately pleaded guilty to witness tampering and was sentenced principally to 24 months' imprisonment.

Ortiz-Franco's removal hearing resumed in 2012 and continued in 2013. He faced limited options, given his criminal record and previously-conceded removability. Accordingly, he applied for deferral of removal under the CAT. In support of his application, he submitted: an affidavit and an additional written statement; background information on gang violence and country conditions in El Salvador; and a letter from the United States Attorney's Office for the Eastern

6

District of New York. The letter did "not dispute that the statements made by [Ortiz-Franco] regarding the MS-13 and members of that street gang may put him in some danger, if he is deported to El Salvador" because of "MS-13's perception, albeit inaccurate, that he cooperated with the government;" the government did not object to a stay of deportation.

Ortiz-Franco offered inconsistent testimony. At one point, he said he joined MS-13 by invitation after he met members of the gang at a bar he frequented; later, he said that the members forced him to join. He first denied being involved in the gang fight that led to the 2009 prosecution; subsequently he testified that he punched his rival after being insulted and seeing his rival "coming toward [him]." As to the witness tampering to which he pleaded guilty, Ortiz-Franco disclaimed wrongdoing and stated that he pleaded guilty because he was pressured to do so by federal agents who "scared [his] children" and told them that he would lose them if he went to trial and would not see them for many years.

As to his CAT claim, Ortiz-Franco testified that: his co-defendants told him he was "in trouble" for "ratting on them," which he understood to mean that "they could kill [him]"; his co-defendants "had the information [he] had given to

7

the federal agents" and had "made copies of that paper [and] . . . give[n] [it] to other [MS-13] members who were in the prison"; and, although he could not name those who had threatened him, they made the MS-13 hand sign.

Asked how he knew that his perceived cooperation would be disclosed to MS-13 members in El Salvador, Ortiz-Franco "imagine[d]" his co-defendants had "contacts" there "because [MS-13] is a big gang." Although Ortiz-Franco testified that gang members "must have sent copies" of the proffer documents to contacts in El Salvador, he had no proof of it.

Ortiz-Franco asserted that the police in El Salvador would not protect him because he was a gang member. The IJ explained that "CAT deferral does not stretch under Board precedent . . . [to] a situation where the police cannot protect someone," but rather requires proof that the government would acquiesce in the torture, and urged Ortiz-Franco's counsel to "deal[] with that issue." Counsel inquired of Ortiz-Franco whether, "[b]esides the gangs[,] . . . any other agency or organization will cause you problems"; Ortiz-Franco replied, "no." Specifically, though Ortiz-Franco was afraid of MS-13, he was "not afraid of the government" or the police in El Salvador, and did not know of any connections between or among MS-13, the Salvadoran government, and his co-defendants.

8

The IJ doubted Ortiz-Franco's truthfulness during the proceedings and ruled that Ortiz-Franco failed to establish that "he would be identified as a turncoat MS-13 member by anyone," that the Salvadoran government would punish or harm him or that "MS-13 has the ability to influence government authorities in El Salvador." To the contrary, the IJ found that "according to background evidence, there has actually been an attempt to broker peace . . . in El Salvador between the gangs"; that the government was seeking to "protect the people of El Salvador"; and that no evidence "suggest[s] that [the Salvadoran government] would acquiesce in harm perpetuated against [Ortiz-Franco] if he were to return to that country." The IJ denied the application for deferral of removal under the CAT, which permitted Ortiz-Franco to be removed.

The BIA affirmed. Specifically, the BIA upheld the IJ's key determinations: Ortiz-Franco "did not establish [that] he will be identified by anyone in El Salvador as an MS-13 member who cooperated with law enforcement officials in the United States," that it is "more likely than not that he will experience harm meeting the definition of torture" in El Salvador, or "that the government of El Salvador will acquiesce to any harm caused to [Ortiz-Franco] by criminal gangs unaffiliated with the government."

The petition for review argues that, as to denial of deferral, the agency

erred in concluding that he did not show the requisite likelihood of torture or

that any torture by gang members would occur with the acquiescence of El

Salvador. The government counters that this Court lacks jurisdiction to consider

the petition for review because our jurisdiction is limited to consideration of

questions of law and constitutional claims, of which Ortiz-Franco raises none.

**DISCUSSION**

Although we have never expressly decided the question, we have

sometimes "assumed" that our review is limited to questions of law and

constitutional claims when an alien otherwise removable for having committed a

covered criminal offense claims entitlement to deferral of removal under the

CAT. De La Rosa v. Holder, 598 F.3d 103, 107 (2d Cir. 2010); cf. Pierre v.

Gonzales, 502 F.3d 109, 113 (2d Cir. 2007) (reviewing application for withholding

of removal and observing that "[b]ecause Pierre is a criminal alien, this Court's

review is limited to constitutional claims and questions of law").

Given the uncertain scope of our jurisdiction to decide petitions

challenging the denial of deferral under the CAT, we have at times avoided the

jurisdictional question by assuming "hypothetical" jurisdiction. See Roig v.

10

Holder, 580 F. App'x 4, 6 (2d Cir. 2014) (summary order) ("To the extent our jurisdiction to review the denial of deferral of removal under the CAT is unresolved, we may assume jurisdiction and deny a petition on the merits where, as here, the agency denied petitioner's claim and his underlying challenges to that decision are without merit." (internal citation omitted)); Keita v. Holder, 486 F. App'x 951, 952 (2d Cir. 2012) (summary order) ("We assume, without deciding, that we have jurisdiction in this case of denial of deferral of removal."). However, such an assumption is prohibited in all but the narrowest of circumstances.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (criticizing exercise of "hypothetical" jurisdiction as "carr[ying] the courts beyond the bounds of authorized judicial action and . . . offend[ing] fundamental principles of separation of powers" and explaining that "[w]ithout jurisdiction the court cannot proceed at all in any cause" (internal quotation marks omitted)); Ctr. for Reprod. Law & Policy v. Bush, 304 F.3d 183, 193-94 (2d Cir. 2002) (recognizing that "ordinarily we are not to assume the existence of jurisdiction in favor of reaching an 'easier' merits issue" but acknowledging "an exception to the rule" for limited and "peculiar circumstances" (internal quotation marks omitted)).

Accordingly, we now consider the issue, and join the majority of courts that have done so, holding that when an alien who is otherwise removable due to the commission of a covered criminal offense seeks deferral of removal under the CAT, appellate jurisdiction is limited to review of constitutional claims and questions of law. See Escudero-Arciniega v. Holder, 702 F.3d 781, 785 (5th Cir. 2012) ("Escudero asserts only factual issues on appeal . . . . Because we do not have jurisdiction to review factual determinations made pursuant to removal orders based upon an aggravated felony, we dismiss Escudero's petition for review of the BIA's denial of . . . protection under the CAT."); Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 309-10 (3d Cir. 2011) ("This Court would lack jurisdiction to consider" petitioner's "disagreement with the BIA's determination that he failed to sufficiently demonstrate that public officials in Colombia would likely acquiesce in his torture. . . . This Court does, however, have jurisdiction over constitutional claims or questions of law [including] . . . whether the Board adjudicated [petitioner's] application for deferral of removal under an incorrect legal standard." (internal quotation marks and citations omitted)); Constanza v. Holder, 647 F.3d 749, 754 (8th Cir. 2011) (same); Saintha v. Mukasey, 516 F.3d 243, 249-51 (4th Cir. 2008) (finding that because alien was removable by reason of an

12

aggravated felony conviction, § 1252(a)(2)(C) prohibited evaluation of the factual merits of his CAT claim and alien could not "repackage[] his . . . argument . . . in an attempt to create a reviewable legal question where there is none"); Jean-Pierre v. U.S. Att'y Gen., 500 F.3d 1315, 1320 (11th Cir. 2007) (same); Tran v. Gonzales, 447 F.3d 937, 943 (6th Cir. 2006) ("Pursuant to § 1252(a)(2)(C) and (D), our review of Tran's CAT claim is limited to questions of law or constitutional issues.").  But see Issaq v. Holder, 617 F.3d 962, 970 (7th Cir. 2010) (holding "a decision under the CAT to deny even deferral of removal [does not] fall[] within the jurisdiction-stripping provisions of either § 1252(a)(2)(B) or § 1252(a)(2)(C)"); Lemus-Galvan v. Mukasey, 518 F.3d 1081, 1083-84 (9th Cir. 2008) (same).

**I**

The CAT provides that "[n]o State Party shall expel, return (*refouler*) or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."  U.N. Convention Against Torture and Other Cruel and Inhuman or Degrading Treatment or Punishment pt. I art. 3, opened for signature Dec. 10, 1984, (S. Treaty Doc. No.) 100-20 (1988), 1465 U.N.T.S. 85.  The CAT, however, "is not self-executing; by its own force, it confers no judicially enforceable right on

13

individuals."  Pierre, 502 F.3d at 114; cf. Medellin v. Texas, 552 U.S. 491, 505 (2008) ("[W]hile treaties may comprise international commitments they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be self-executing and is ratified on these terms." (internal quotation marks and alteration omitted)); id. at n.2 ("[A] 'non-self-executing' treaty does not by itself give rise to domestically enforceable federal law.").  Congress implemented the Convention by passing the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), 8 U.S.C. § 1231, and directing the executive to promulgate regulations.

FARRA and its implementing regulations provide generally that withholding of removal "shall be granted" if an alien demonstrates that it is more likely than not that he will be tortured if removed.  8 C.F.R. § 1208.16(d)(1); see also id. § 1208.16(b); 8 U.S.C. § 1231(b)(3).  Denial of this relief is, however, mandatory under certain circumstances.  8 C.F.R. § 1208.16(d)(2).  Specifically, an alien is ineligible for withholding of removal (or asylum) "if the Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States."  8 U.S.C. § 1231(b)(3)(B)(ii); see also 8 C.F.R. § 1208.16(d)(2).

14

To give effect to the CAT even when an alien has been ordered removed and is "subject to the provisions for mandatory denial of withholding of removal," the implementing regulations provide that the alien "shall be granted deferral of removal" if the alien establishes that "he or she is more likely than not to be tortured" if removed. 8 C.F.R. § 1208.17(a). Torture, for purposes of the CAT's implementing regulations, is "severe pain or suffering, whether physical or mental," that is "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id. § 1208.18(a)(1). Deferral of removal may be terminated on the government's motion if, after a hearing, an alien cannot demonstrate the continuing probability of torture if removed. Id. § 1208.17(d); see Ali v. Mukasey, 529 F.3d 478, 481-82 (2d Cir. 2008) (considering petition for review of order of BIA terminating grant of deferral of removal under the CAT).

## II

Because the CAT does not itself confer any "judicially enforceable right," Pierre, 502 F.3d at 114, it of course also has nothing to say about the scope of judicial review of a right defined by statute or the implementing regulations. Congress has, however, specified that "[n]otwithstanding any other provision of

15

law, and except as provided in the [implementing] regulations[,]" nothing in the FARRA shall be construed as providing any court jurisdiction to consider or review claims raised under the CAT "except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. § 1252)." 8 U.S.C. § 1231 note (United States Policy with Respect to the Involuntary Return of Persons in Danger of Subjection to Torture). Accordingly, this Court has jurisdiction to consider a claim under the CAT only as part of its review of a final order of removal.

Our jurisdiction over a petition for review of a final order of removal is limited, however, when the petitioner is "removable by reason of having committed a [covered] criminal offense." Id. § 1252(a)(2)(C). Review then extends no further than to "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." Id. § 1252(a)(2)(D). Because judicial review of deferral claims is only provided "as part of the review of a final order of removal," the scope of such review must likewise be so limited. 8 C.F.R. § 208.18(e)(1); see also id. § 208.18(e)(2) ("Except as otherwise expressly provided, nothing in this paragraph shall be construed to create a private right of action or to authorize the

16

consideration of issuance of administrative or judicial relief.").

## III

Ortiz-Franco argues for an exception to the jurisdictional limitation that would otherwise apply when a CAT claim is raised by an alien who is removable by reason of having committed a covered criminal offense.  He contends that statutory language opens an exclusive avenue of review that contains no express limitation to constitutional claims or questions of law: "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT]."  8 U.S.C. § 1252(a)(4).

We are unpersuaded by Ortiz-Franco's argument that the language "any cause or claim" widens appellate jurisdiction to review a final order of removal entered against a criminal alien.  As the Eighth Circuit has concluded, the contention that "we have jurisdiction 'without limit' over CAT claims because § 1252(a)(4) super[s]edes § 1252(a)(2)(C) . . . is without merit."  Lovan v. Holder, 574 F.3d 990, 998 (8th Cir. 2009).  As that court explained: "Section 1252(a)(4) provides that CAT claims may only be raised in petitions for review under § 1252.  It does not grant reviewing courts greater jurisdiction over CAT claims

17

than over other claims." Id.

Ortiz-Franco argues that unless § 1252(a)(4) is read as an exception to the jurisdictional limitation, it would be surplusage because FARRA already makes clear that no court has jurisdiction to consider or review claims raised under the CAT "except as part of the review of a final order of removal." 8 U.S.C. § 1231 note (United States Policy with Respect to the Involuntary Return of Persons in Danger of Subjection to Torture). But § 1252(a)(4) simply serves to "confirm[ ]" that the statutory right to judicial review exists only as part of a review of a final order of removal. Omar v. McHugh, 646 F.3d 13, 18 (D.C. Cir. 2011).

Congressional intent to limit review to a petition filed with this Court is further supported by the statutory purpose--"to limit all aliens to one bite of the apple and thereby streamline what the Congress saw as uncertain and piecemeal review of orders of removal." Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 324 n.3 (2d Cir. 2006) (internal quotation marks and alterations omitted). Thus § 1252(a)(4) serves to clarify that, even after the elimination of separate habeas corpus review in this context, see 8 U.S.C. § 1252(a)(5), review of a claim under the CAT is nevertheless available, as part of a petition for review of a final order of removal. See Savchuck v. Mukasey, 518 F.3d 119, 123-24 (2d Cir. 2008) (per

18

curiam) (applying jurisdictional limitation to claims for asylum, withholding, and deferral of removal under the CAT); see also Pierre, 502 F.3d at 113 (noting Pierre's habeas petition raising a claim under the CAT was converted to a petition for review).

## IV

Ortiz-Franco contends that because deferral is a temporary remedy, it is not a final order of removal to which the jurisdictional limitation in § 1252(a)(2)(C) applies.  The Seventh Circuit has adopted this view--"A deferral of removal is like an injunction: for the time being, it prevents the government from removing the person in question, but it can be revisited if circumstances change."  Wanjiru v. Holder, 705 F.3d 258, 264 (7th Cir. 2013).  But this reading would not widen our review, as Ortiz-Franco contends.  If we were to treat the adjudication of the deferral claim as some non-final determination rather than (as instructed by the implementing regulations) "as part of the review of a final order of removal," 8 C.F.R. § 208.18(e)(1), this Court would lack jurisdiction to review *any* denial of deferral, even one that did raise a constitutional claim or a question of law.  See Chupina v. Holder, 570 F.3d 99, 100 (2d Cir. 2009) (per curiam) (dismissing petition for review because there was "no final order of

19

removal over which we may assert jurisdiction").

Treating the denial of a deferral as a final, reviewable order therefore accords with the "presumption favoring judicial review of administrative action." Kucana v. Holder, 558 U.S. 233, 251 (2010); accord Sepulveda v. Gonzales, 407 F.3d 59, 62 (2d Cir. 2005). Moreover, denial of deferral means that a removal order may be carried out at once. Chupina, 570 F.3d at 103 ("An order of removal is 'final' upon . . . the BIA's affirmance of the immigration judge's order of removal . . . ."); see also Stone v. INS, 514 U.S. 386, 398 (1995) ("Deportation orders are self-executing orders, not dependent upon judicial enforcement."); Aquavella v. Richardson, 437 F.2d 397, 404-05 (2d Cir. 1971) (considering "impact of the challenged action on the parties" in determining whether agency action is final).

In any event, we are bound by precedent holding that an adjudication of a claim for deferral under the CAT "qualifies as an order of removal that [an alien] may appeal." Pierre v. Holder, 738 F.3d 39, 47 (2d Cir. 2013) ("Our cases make clear that an agency order may qualify as an order of removal where it establishes the alien's removability, even if it does not order that the alien be immediately removed."). The Seventh Circuit posits that an adjudication of CAT

20

deferral can be "final enough to permit judicial review, but at the same time not be the kind of 'final' order covered by § 1252(a)(2)(C)," Wanjiru, 705 F.3d at 264; but that formulation finds no support in the statute or case law. See Chupina, 570 F.3d at 103 (opining that, "having remanded the case to the immigration judge for consideration of applications which directly affect whether Chupina, who conceded removability, can in fact be removed to Guatemala, the BIA's decision cannot constitute a 'final order of removal'"); see also Foti v. INS, 375 U.S. 217, 226 (1963) (construing earlier version of immigration statutes and holding denial of discretionary relief from removal was "antecedent to and a constituent part of the 'final order of deportation'").

## V

Ortiz-Franco argues (relying on the reasoning of the Ninth Circuit), that there is no limitation on this Court's jurisdiction to review the denial of deferral of removal because an alien's commission of a criminal offense is not the basis for denying deferral of removal. See Lemus-Galvan, 518 F.3d at 1083 ("The jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(C) does not deprive us of jurisdiction over denials of deferral of removal under the CAT, which are always decisions on the merits."). However, denial of the application for deferral of

removal under the CAT is not the reason the alien is removable. Ortiz-Franco is removable--and concededly so--because he entered the country illegally and then committed crimes that render an alien removable, 8 U.S.C. § 1182(a)(2). Deferral under the CAT is simply "an impediment" to removal that is removed by denial of that relief. Alibasic v. Mukasey, 547 F.3d 78, 83 (2d Cir. 2008) (stating that after the BIA overturned the IJ's finding that the alien was eligible for asylum, the "IJ's underlying finding of removability based on Alibasic's concessions . . . still stands").

Accordingly, "once we are satisfied that a given alien has been found 'removable by reason of' conviction of a crime covered by § 1252(a)(2)(C), we lack jurisdiction to conduct further review of the 'final order of removal,' whether relating to asylum, withholding of removal, or CAT relief," except to the extent the alien raises constitutional claims or questions of law. Pechenkov v. Holder, 705 F.3d 444, 450 (9th Cir. 2012) (Graber, J., concurring) (citing Constanza, 647 F.3d at 753-54; Saintha, 516 F.3d at 249-51; Conteh v. Gonzales, 461 F.3d 45, 62-63 (1st Cir. 2006); Alaka v. Att'y Gen., 456 F.3d 88, 102 & n.24 (3d Cir. 2006)); see also Alphonsus v. Holder, 705 F.3d 1031, 1050 (9th Cir. 2013) (Graber, J., concurring in part and dissenting in part) ("Our court has read an additional exception into the

22

statute's otherwise unequivocal text, under which we review such orders if the BIA did not rest its decision on the fact of the aggravated felony but instead denied relief from removal on the merits. That interpretation of § 1252(a)(2)(C) ignores the statute's text and conflicts with the views of at least four of our sister circuits.").

Ortiz-Franco emphasizes that deferral is mandatory for a criminal alien who sustains his burden, 8 C.F.R. § 208.17(a); but that mandate does not expand our jurisdiction, which remains limited to review claims raised under the CAT only "as part of the review of a final order of removal." 8 U.S.C. § 1231 note (United States Policy with Respect to the Involuntary Return of Persons in Danger of Subjection to Torture). In conducting our review, "the applicability of § 1252(a)(2)(C) is a straightforward inquiry: Was the alien charged with removability because of a relevant crime, and did the IJ correctly sustain that charge? If so, we lack jurisdiction over all questions not covered by § 1252(a)(2)(D)." Pechenkov, 705 F.3d at 451-52 (Graber, J., concurring).

## VI

Ortiz-Franco has conceded that he is removable as an alien present in the United States without being admitted or paroled and as an alien convicted of a

23

controlled substance violation and a crime of moral turpitude. As set forth above, we nevertheless retain jurisdiction to review any colorable constitutional claim and legal question raised in connection with his claim for deferral of removal under the CAT. Ortiz-Franco raises none. He simply "disputes the correctness of [the] IJ's fact-finding" that underpins her conclusion that he had not established that it was more likely than not that MS-13 would torture him with the acquiescence of the Salvadoran government. Xiao Ji Chen, 471 F.3d at 329. To the extent Ortiz-Franco attempts to recharacterize this factual dispute as an error of law through his conclusory assertion that the BIA misstated or ignored his arguments, this is insufficient.[2] See id. at 330-31 ("[A] petitioner's

---

[2] This case was argued in tandem with Alvarez-Monroy v. Holder and Laurent v. Holder. On October 21, 2014, this Court remanded the petition in Alvarez-Monroy because the IJ's fact-finding was "flawed by an error of law," Xiao Ji Chen, 471 F.3d at 329, and the agency erred in applying the government acquiescence standard, De La Rosa, 598 F.3d at 110. Alvarez-Monroy, 12-2749, Dkt. No. 156 (2d Cir. Oct. 21, 2014). On November 5, 2014, we remanded Laurent's petition for review. Laurent v. Holder, 581 F. App'x 77 (2d Cir. 2014) (summary order). We concluded the BIA committed legal error because it ignored and mischaracterized record evidence, see Mendez v. Holder, 566 F.3d 316, 323 (2d Cir. 2009) (per curiam), and engaged in impermissible fact-finding, see Weinong Lin v. Holder, 763 F.3d 244, 247 (2d Cir. 2014). We did not reach the jurisdictional question we address here because of the presence of legal questions that provided a narrow ground for decision. See Baraket v. Holder, 632 F.3d 56, 59 (2d Cir. 2011) (observing that when resolution of a question is not "necessary for the decision of the case," it is dictum).

mere resort to the terms conventionally used in describing constitutional claims and questions of law will not overcome Congress's decision to deny jurisdiction over claims which in reality consist of nothing more than quarrels over the correctness of fact-finding and of discretionary decisions.").

## CONCLUSION

For the foregoing reasons, we DISMISS the petition for review for lack of jurisdiction and any outstanding motions are DENIED as moot.

Lohier, Circuit Judge, concurring:

I join the opinion of the Court.  However much I favor judicial review of administrative action in immigration matters, the text of 8 U.S.C. § 1252 plainly precludes our review of the Government's denial of Elenilson Ortiz-Franco's claim for deferral of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  Here, Ortiz-Franco's final order of removal is subject to the jurisdictional bar of § 1252(a)(2)(C) because he was deemed removable by reason of having committed crimes listed in that provision, see De La Rosa v. Holder, 598 F.3d 103, 107 (2d Cir. 2010), and his challenge to the denial of deferral does not fall within the exception to that jurisdictional bar because it is entirely fact-based, unaccompanied by any legal or constitutional claim, see 8 U.S.C. § 1252(a)(2)(D).  As the majority opinion points out, most circuits that have grappled with the same issue would agree that these two features combine to strip us of jurisdiction to decide this case.[1]

---

[1] I appreciate that two sister circuits have arrived at the opposite result after interpreting the same statutory text.  See Wanjiru v. Holder, 705 F.3d 258 (7th Cir. 2013); Lemus-Galvan v. Mukasey, 518 F.3d 1081, 1083 (9th Cir. 2008).  But it is a statutory stretch to accept the Seventh Circuit's view that CAT deferral of removal is at once non-final for purposes of avoiding the jurisdiction-stripping

To the majority's analysis, however, I would add the following.

Although I know it cuts against the current orthodoxy of statutory construction, in my view this is a high-stakes case in which checking the legislative history is "useful, even when the meaning can be discerned from the statute's language, to reinforce or confirm a court's sense of the text."  Robert A. Katzmann, Judging Statutes 35 (2014).  Among other things, this case implicates our judicial power to review an important category of petitions — a power of review that the Government claims for itself alone.  And the stakes are very high for petitioners, like Ortiz-Franco, who may face torture if the Government's denial of deferral of removal proves to be mistaken.

---

provision, § 1252(a)(2)(C), but final "enough" to permit judicial review of CAT deferral claims under § 1252(a)(4).  Wanjiru, 705 F.3d at 264.  "Final order of removal" in § 1252(a)(2)(C) means just what it means in other surrounding provisions of the same statute.  And I am ultimately unconvinced by the Ninth Circuit's interpretation of § 1252(a)(2)(C) as eliminating jurisdiction to review only those orders that remove an alien "by reason of" a covered criminal offense. Lemus-Galvan, 518 F.3d at 1083; see also Alvarez-Santos v. INS, 332 F.3d 1245, 1247 (9th Cir. 2003) (Section 1252(a)(2)(C) "strips us only of jurisdiction to review orders of removal predicated on commission or admission of a crime, not orders of removal not so predicated.").  The relevant text of § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a [qualifying] criminal offense") limits jurisdiction based on the category of "alien" whose final order of removal is the subject of appeal, not the reason the "order" issues.  In other words, "by reason of" modifies "alien," not "order."

2

My review of the legislative history of § 1252 confirms the majority's reading of the text. The conference report for the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, makes clear that Congress sought broadly to limit judicial review of appeals of orders of removal by "criminal aliens." See H.R. Rep. No. 109-72, at 174 (2005) (Conf. Rep.) (describing § 106 of the REAL ID Act as intended to ensure that "criminal aliens will have fewer opportunities to delay their removal" and that "criminal aliens will not receive more judicial review than non-criminals"). By contrast, nothing in the legislative history supports the Ninth Circuit's view that § 1252(a)(2)(C)'s jurisdictional bar applies only to orders that determine an alien is removable by virtue of having committed a qualifying crime. See supra note 1.

The Senate legislative history relating to the CAT's ratification — years before the implementing legislation was enacted — only reinforces the conclusion that Congress did not contemplate judicial review of the denial of CAT claims standing alone. During the ratification process, the Senate made clear that the treaty would not be self-executing, see Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, S. Exec. Rep. 101-30, at 18 (1990), suggesting that courts would have no role in reviewing CAT

3

claims while implementing legislation was pending.  Indeed, the ratifying Senate clearly intended to leave the decision to grant or deny CAT claims exclusively in the hands of the "competent authorities" — that is, "the Secretary of State in extradition cases and . . . the Attorney General in deportation cases." Id. at 17.

A final word.  I have little reason to doubt the Government's representation that it would never remove a noncitizen to a country where (in its judgment) he is likely to be tortured.  See, e.g., Immigration Relief Under the Convention Against Torture for Serious Criminals & Human Rights Violators: Hearing Before the Subcomm. on Immigration, Border Sec., and Claims of the H. Comm. on the Judiciary, 108th Cong. 11 (2003) (statement of C. Stewart Verdery, Assistant Secretary for the Border and Transportation Security Policy, Department of Homeland Security); id. at 15 (statement of Eli Rosenblum, Director, Office of Special Investigations, U.S. Department of Justice); Convention Against Torture: Hearing Before the S. Comm. on Foreign Relations, 101st Cong. 718, 14-15 (1990) (statement of Mark Richard, Deputy Assistant Att'y Gen., Criminal Division, Department of Justice); Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8478-79 (Feb. 19, 1999).  But the state of play today is that noncitizens with criminal convictions who appeal the

4

Government's denial of deferral of removal under the CAT will have access to federal court in a wide geographic swath of the Nation (the Seventh and Ninth Circuits), while similarly situated men and women in other parts of the country (including, now, this Circuit) will not. This is not a sustainable way to administer uniform justice in the area of immigration. Congress, or the Supreme Court, can tell us who has it right and who has it wrong.