Hamilton v. Whitaker

BIA
Clemente, IJ
A074 986 838

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8ᵗʰ day of January, two thousand nineteen.

PRESENT:
>
> JOHN M. WALKER, JR.,
> BARRINGTON D. PARKER,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges.*

_____

IAN D. HAMILTON, AKA UNCLE UNKNOWN,
> *Petitioner,*

> v.

MATTHEW G. WHITAKER, ACTING UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

17-1013
NAC

| | |
|---|---|
| **FOR PETITIONER:** | Thomas H. Nooter, Freeman Nooter & Ginsberg, New York, NY. |
| **FOR RESPONDENT:** | Chad A. Readler, Acting Assistant Attorney General; Douglas E. Ginsburg, Assistant Director; Erik R. Quick, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC. |

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Ian D. Hamilton, a native and citizen of Jamaica, seeks review of an April 5, 2017, decision of the BIA affirming a November 9, 2016, decision of an Immigration Judge ("IJ") denying Hamilton's application for deferral of removal under the Convention Against Torture ("CAT"). *In re Ian D. Hamilton,* No. A 074 986 838 (B.I.A. Apr. 5, 2017), *aff'g* No. A 074 986 838 (Immig. Ct. N.Y. City Nov. 9, 2016). We assume the parties' familiarity with the underlying facts and procedural history in this case, which we include only as necessary to explain our decision to grant the petition for review.

Under the circumstances of this case, we have reviewed both the IJ's and BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We assume Hamilton's credibility because neither the IJ nor the BIA discussed credibility at any point. 8 U.S.C. § 1158(b)(1)(B)(iii)

2

("[I]f no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal."). Hamilton's convictions limit our review to constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(C), (D); *Ortiz-Franco v. Holder*, 782 F.3d 81, 90-91 (2d Cir. 2015) (jurisdiction-stripping provision in § 1252(a)(2)(C) applies to CAT deferral). Although the jurisdictional limitation in § 1252(a)(2)(C) generally prevents us from reviewing the agency's factual determinations regarding the likelihood of torture, *Ortiz-Franco*, 782 F.3d at 90-91 & n.2, remand is warranted based on the questions of law discussed below.

**Standard for CAT Relief**

"[T]he CAT expressly prohibits the United States from returning any person to a country in which it is more likely than not that he or she would be in danger of being subjected to torture." *Khouzam v. Ashcroft*, 361 F.3d 161, 168 (2d Cir. 2004) (quotation marks omitted). Torture is defined as "severe pain or suffering . . . inflicted by or at the instigation of or with the consent or acquiescence

3

of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Acquiescence, in turn, "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7); *see Khouzam*, 361 F.3d at 171 (holding that acquiescence "requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it"). The agency must consider "all evidence relevant to the possibility of future torture," including "[e]vidence of past torture," evidence regarding the possibility of internal relocation, "[e]vidence of gross, flagrant, or mass violations of human rights," and "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3)(i)-(iv).

**Retaliation by Drug Traffickers**

Although the jurisdictional limitations preclude our review of the agency's factual findings, we review whether the agency committed legal error in its consideration of the

4

evidence. *See Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009); *Ortiz-Franco*, 782 F.3d at 91 n.2. "We readily acknowledge that the agency does not commit an 'error of law' every time an item of evidence is not explicitly considered or is described with imperfect accuracy, but where, as here, some facts . . . have been totally overlooked and others have been seriously mischaracterized, we conclude that an error of law has occurred." *Mendez*, 566 F.3d at 323. In concluding that Hamilton's fear of the drug traffickers he helped to convict was "purely speculation and conjecture," the IJ overlooked evidence that associates of these drug traffickers firebombed both Hamilton's family's business and residence in 2014, apparently in retaliation for Hamilton's cooperation with the U.S. government. The IJ's statement that Hamilton's "brothers live in Jamaica and they have no issues," is also incorrect for this same reason: it fails to acknowledge the two firebombings and contradicts Hamilton's testimony and affidavits that his mother and one brother moved to the United States because of the threats, while his father and other brother remained in Jamaica because they did not have U.S. visas, but feared for their lives and moved from place to

place to avoid the perpetrators.[1]

Hamilton also argues that the agency must consider the aggregate risk of torture and did not do so in his case.  We agree.  We have held that past incidents of harm must be weighed cumulatively in the asylum context, *Poradisova v. Gonzales*, 420 F.3d 70, 80 (2d Cir. 2005), and other courts have applied this principle to CAT relief, holding that the risk of torture must be assessed cumulatively, se*e Cole v. Holder*, 659 F.3d 762, 775 (9th Cir. 2011); *Kamara v. Att'y Gen.*, 420 F.3d 202, 214 (3d Cir. 2005).  The CAT regulations further support this argument by requiring the agency to consider "all evidence relevant to the possibility of future torture."  8 C.F.R. § 1208.16(c)(3).

Hamilton was a member of a drug trafficking organization that transported large quantities of marijuana from Jamaica to the United States.  He provided incriminating information about two co-defendants, who were members of the same organization and who allegedly had political connections and ties to powerful gang leaders in Jamaica.  He testified in open court against another member of the organization; he was

---

[1] Hamilton's father died in December 2014.

"pivotal" in securing that conviction.  In total, he gave U.S. authorities information about 13 people involved in drug trafficking.  Another member of the organization allegedly threatened Hamilton in New York and orchestrated the arsons of Hamilton's family's business and residence in Jamaica. The individual he testified against allegedly employed Jamaican police officers who served as enforcers or hitmen to "take care of his problem[s]" in Jamaica.  The IJ discussed each of these people separately and concluded that Hamilton's fear of each was speculative, but the IJ did not acknowledge their relationships with one another (as members of the same drug trafficking organization) or their associates and relatives in Jamaica.[2]

Given the other evidence in the record that bolsters Hamilton's claim—the Government's sentencing letter reflecting that Hamilton could be in danger for his cooperation, and the expert and country reports documenting both the power and violence of Jamaican drug traffickers

---

[2] The IJ's statement that one of the co-defendants may be a U.S. citizen is contradicted by the record, which reflects that he lacks legal status in the United States and faces mandatory removal to Jamaica on account of his involvement in drug trafficking.

and extensive government corruption and participation in drug trafficking—the IJ's failure to fully consider the arsons or weigh the risks Hamilton faced cumulatively is material.

**Government Acquiescence**

Further, the agency did not adequately explain its acquiescence determination and may have misapplied the legal standard for government acquiescence. *See Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006) (the agency commits legal error if its decision is made "without rational justification" or is "based on a legally erroneous standard."). We have held:

> Where a government contains officials that would be complicit in torture, and that government, on the whole, is admittedly incapable of actually preventing that torture, the fact that some officials take action to prevent torture would seem neither inconsistent with a finding of government acquiescence nor necessarily responsive to the question of whether torture would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.".

*De La Rosa v. Holder*, 598 F.3d 103, 110 (2d Cir. 2010) (quoting Article 1, U.N.T.S. 85 (CAT)).

The agency's acquiescence determination relied entirely

8

on the police response to the 2014 arson of Hamilton's family's business, which was unsuccessful because Hamilton's family members did not cooperate in prosecuting the person arrested for the crime.  However, the IJ did not acknowledge Hamilton's explanation that his family members dropped the charges out of a fear that the Jamaican government could not protect them from further retaliation. Nor did the IJ explain how this police response outweighed Hamilton's testimony that several Jamaican police officers worked as drug couriers and hitmen for the drug trafficking organization he feared, or the evidence in the record of police officers' and elected officials' ties to organized crime and an inability or unwillingness to curb violence, including retaliation against witnesses in criminal prosecutions.

Because the IJ overlooked the 2014 arsons when he found that Hamilton's fear of retaliation by the drug traffickers was speculative, failed to consider the threats against Hamilton in the aggregate, and may have misapplied the legal standard for acquiescence by relying solely on Hamilton's relatives' refusal to prosecute the arson, we remand for the

agency to more fully assess the record and explain its decision. *See Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 342-43 (2d Cir. 2006) (finding that the "IJ . . . did not evaluate, or even meaningfully acknowledge" testimony and evidence favorable to the petitioner, "and we must therefore give the IJ [an] opportunity to do so").

For the foregoing reasons, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED for further proceedings consistent with this order. As we have completed our review, the stay of removal that the Court previously granted in this petition is VACATED. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court



10