13-1484-ag
Lugo v. Holder

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: Dec. 19, 2014          Decided: April 9, 2015)

Docket No. 13-1484-ag

——————————————

MARIA C. LUGO,

*Petitioner,*

– v. –

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL

*Respondent.*

——————————————

Before: CALABRESI, B.D. PARKER and LIVINGSTON, *Circuit Judges.*

Maria C. Lugo appeals from the Board of Immigration Appeals' March 28, 2013 order denying cancellation of removal, and denying relief under the Convention Against Torture. Ms. Lugo argues that the Board erred in holding that her 2005 conviction for misprision of felony qualified as a "crime involving moral turpitude" making her ineligible for cancellation of removal. She also argues that the Board erred in denying her Convention Against Torture claim. We conclude that this appeal raises two issues that are best resolved in the first instance by the Board in a precedential opinion: (1) whether the Board still adheres to the position that misprision of felony qualifies as a "crime involving moral turpitude" notwithstanding the Ninth Circuit's contrary holding in *Robles-Urrea v. Holder*, 678 F.3d 702 (9th Cir. 2012), and (2) if so, whether the Board's position can be applied retroactively to Ms. Lugo's case. We do not reach Ms. Lugo's Convention Against Torture claim. We VACATE the judgment and REMAND the case for further proceedings consistent with this opinion.

JOSHUA BARDAVID, New York, N.Y., *for Petitioner.*

VICTOR M. LAWRENCE (William C. Peachey and Mona Maria Yousif *on the brief*), *for* Stuart F. Delery, Assistant Attorney General, Civil Division, U.S. Dep't of Justice, Washington, D.C., *for Respondent.*

1

CALABRESI, *Circuit Judge*:

## I. FACTUAL BACKGROUND

Maria C. Lugo is a citizen of Venezuela who came to the United States in 1996 on a nonimmigrant B-2 visa, and remained beyond the authorized period. In 2005, Ms. Lugo was charged with concealing a felony. This charge stemmed from the actions of Ms. Lugo's then-boyfriend, who sold heroin. On the advice of her attorney, who told her that she faced up to five years of incarceration, Ms. Lugo pled guilty in the Eastern District of New York to one count of misprision of a felony under 18 U.S.C. § 4. She was sentenced to time served plus a fine of $100. Ms. Lugo avers that her attorney never explained to her that a guilty plea could jeopardize her immigration status.

On January 25, 2007, the Department of Homeland Security charged Ms. Lugo as removable from the United States. Ms. Lugo applied for cancellation of removal based on hardship to her U.S. citizen child, and for relief under the United Nations Convention Against Torture ("CAT"). In March 2011, Immigration Judge Vivienne E. Gordon-Uruakpa issued an oral decision finding that Ms. Lugo was barred from cancellation of removal because of her conviction for misprision of felony. The Immigration Judge held, relying on the Board of Immigration Appeals' ("Board") decision in *Matter of Robles-Urrea*, 24 I&N Dec. 22 (BIA 2006), that misprision of felony is a "crime involving moral turpitude" ("CIMT") which automatically stops the clock on the ten-year "continuous physical presence" requirement for cancellation of removal under 8 U.S.C. § 1229b(d)(1)(B). The Immigration Judge also denied Ms. Lugo's claim for CAT relief and ordered Ms. Lugo

removed to Venezuela. Ms. Lugo appealed the decision to the Board, which affirmed the Immigration Judge's determinations on both issues.

## II.   DISCUSSION

In appeals from Board decisions, this Court reviews legal conclusions *de novo*, giving deference to the Board's published, precedential interpretation of the Immigration and Nationality Act. *Rosario-Mijangos v. Holder*, 717 F.3d 269, 277 (2d Cir. 2013). This Court, however, grants no deference to the Board's interpretation of federal criminal laws. *Higgins v. Holder*, 677 F.3d 97, 102 (2d Cir. 2012) (per curiam). The Board's factual findings are reviewed under the substantial evidence standard, and must be supported by "reasonable, substantial, and probative evidence in the record when considered as a whole." *Kone v. Holder*, 596 F.3d 141, 146 (2d Cir. 2010).

This case raises a series of questions we believe are best addressed in the first instance by the Board in a precedential opinion.

### A.  Whether Misprision of Felony is a Crime Involving Moral Turpitude

The initial question is whether, in view of an existing circuit split, the Board will interpret misprision of felony under 18 U.S.C. § 4 as a CIMT. Originally, in *Matter of Sloan*, 12 I&N Dec. 840, 848 (A.G. 1968; BIA 1966), the Board held that misprision of felony was not a CIMT. The Eleventh Circuit then adopted the contrary rule in *Itani v. Ashcroft*, 298 F.3d 1213, 1216 (11th Cir. 2002), holding that misprision of felony *is* a categorical CIMT. The Board switched to the Eleventh Circuit's view in *Matter of Robles-Urrea*, but the Board's decision in that case was reversed by the Ninth Circuit. *Robles-Urrea v. Holder*, 678 F.3d 702, 711 (9th Cir. 2012) (holding that misprision of felony is not a CIMT). We are thus left to wonder whether, going forward, the Board wishes to adopt the Ninth Circuit's rule or the

3

Eleventh Circuit's. We believe it is desirable for the Board to clarify this matter in a published opinion. *Cf. Ortiz-Franco v. Holder*, No. 13-3610, slip op. at 4-5 (2d Cir. Apr. 1, 2015) (Lohier, J., concurring) (noting an analogous circuit split, and stating "[t]his is not a sustainable way to administer uniform justice in the area of immigration").

**B. Whether a Rule that Misprision of Felony is a CIMT May be Retroactively Applied**

Should the Board decide to adhere, in circuits other than the Ninth, to the rule that misprision of felony is a CIMT, the question then becomes whether application of such a rule in this case is impermissibly retroactive. In the decision under review, the Board took the wrong approach to this question. *See* Special App'x at 3. It is irrelevant whether the statute terminating an alien's "continuous physical presence" upon commission of a CIMT was enacted before Lugo's misprision of felony conviction, because the Board decision that *classified* that offense as a CIMT was handed down only after her guilty plea. Whether an agency decision may permissibly be applied retroactively is determined by looking at five factors: (1) whether the case is one of first impression, (2) whether the new rule presents an abrupt departure from well-established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order places on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard. *N.L.R.B. v. Oakes Mach. Corp.*, 897 F.2d 84, 90 (2d Cir. 1990); *accord, e.g.*, *Velasquez-Garcia v. Holder*, 760 F.3d 571, 581 (7th Cir. 2014); *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 951 (9th Cir. 2007).

We believe that factors one and four are not seriously at issue in the case before us.

4

They clearly favor Ms. Lugo. The case is not one of first impression, and the degree of the burden is massive (removal from the United States, with life-changing consequences for Ms. Lugo and her children).

Factors two, three, and five, however, raise issues that are best addressed in the first instance by the Board. We therefore remand the case for consideration of these three factors. We do so because we believe that the Board should have the opportunity to act first, and because we would benefit from the Board's precedential opinion. *Cf., e.g.*, *NLRB v. Coca-Cola Bottling Co.*, 55 F.3d 74, 78 (2d Cir. 1995) (indicating that retroactivity is a question for the agency in the first instance where the agency announces a new rule while an appeal of an order previously decided under the old rule is pending (citing *NLRB v. Food Store Emps.' Union*, 417 U.S. 1, 10 n.10 (1974))).

As to factor two, we would like the Board to address whether its holding in *Matter of Robles-Urrea* was a departure from prior law. We note that the Board issued an unpublished opinion in 2004, prior to Ms. Lugo's guilty plea, holding that misprision of felony was a categorical CIMT. *Matter of Aoun*, 2004 WL 2952182 (BIA Nov. 10, 2004). This opinion, however, contained explicit language establishing that it was not precedential. *Id.* at *1. Significantly, the Board subsequently stated in *Matter of Robles-Urrea*, a precedential opinion, that the prior rule had remained valid until 2006. *See Matter of Robles-Urrea*, 24 I&N Dec. at 25 ("We therefore conclude that *Matter of Sloan* . . . remained binding authority on the question whether a violation of 18 U.S.C. § 4 is a crime involving moral turpitude."). Accordingly, we ask the Board to address whether defendants should be treated as warned by opinions marked as non-precedential in the face of published Board precedent to the contrary.

As to the third factor, we invite the Board to consider whether a defendant should automatically be assumed to have relied on existing rules limiting deportation at the time she pled guilty to a crime where that guilty plea, because of a change in rules, subsequently becomes a basis for deporting her. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 322 (2001) (holding that a statute attaching new immigration consequences to a guilty plea did not apply retroactively in part because "[t]here can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions.").

Additionally, as to both factors two and three, we invite the Board, should it find that these factors do not automatically favor the petitioner in a case such as this, to consider (A) whether Ms. Lugo in fact had notice that her guilty plea could lead to deportation, (B) whether she relied on the prior rule that it could not, and (C) whether such reliance was reasonable. Answering these questions may require additional factfinding. *See* 8 C.F.R. § 1003.1(d)(3)(iv) ("If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge . . . .").

More generally, as to factors two and three, we point the Board to recent analysis from the Supreme Court that raises constitutional concerns with the retroactive use of deportation as a collateral consequence to a guilty plea. In *Padilla v. Kentucky*, the Court determined that a defendant's counsel must inform their client whether a plea bargain carries a risk of deportation, and that failure to do so gives rise to a Sixth Amendment claim for ineffective assistance of counsel. 559 U.S. 356, 374 (2010). The Court further noted that deportation is a "particularly severe penalty," and is also, "because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral

6

consequence." *Id.* at 365-66; *see also St. Cyr*, 533 U.S. at 323 ("Now that prosecutors have received the benefit of these plea agreements, agreements that were likely facilitated by the aliens' belief in their continued eligibility for . . . relief, it would surely be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations to . . . deprive them of any possibility of such relief.") (internal citations and quotations omitted).

In this respect, we note that we have held that the Supreme Court's language in these cases was insufficient to overturn our prior holdings that retroactive deportation does not violate the Ex Post Facto Clause. *See Morris v. Holder*, 676 F.3d 309, 316-17 (2d Cir. 2012). Nevertheless, the gravitational pull of these constitutional norms – the rights of fair notice and effective assistance of counsel – may provide a reason not to apply, retroactively, new agency rules that establish deportation as a consequence of certain crimes. On the other hand, there may well be reasons, that the Board is best suited to proffer, why those cases should have little effect in this context.

Finally, as to factor five, we invite the Board to consider the extent of the statutory interest in applying its ruling in *Robles-Urrea* retroactively to Ms. Lugo's conviction and thus rendering her ineligible for cancellation of removal. *See, e.g.*, *WPIX, Inc. v. NLRB*, 870 F.2d 858, 867 (2d Cir. 1989) (finding that factor five favored the agency where retroactive application would help avoid "tremendous instability in labor relations"); *Ewing v. NLRB*, 861 F.2d 353, 362 (2d Cir. 1988) (suggesting that factor five favors the agency if the new rule "stems from" the relevant statute's "central concerns").

We value and look forward to receiving the Board's considered precedential opinion on however many of these questions it needs, or wishes, to address in deciding this case.

**C. Ms. Lugo's Convention Against Torture Claim**

Because we vacate the Board's holding with respect to Ms. Lugo's claim for cancellation of removal, we do not reach her CAT claim.

### III. CONCLUSION

We VACATE the Board's decision and REMAND the case for further proceedings consistent with this opinion. In the interests of judicial economy, any further appeals in this case by either party will return to this panel.