# United States Court of Appeals
## For the First Circuit

No. 18-1960

NACM-NEW ENGLAND, INC.,
d/b/a BUSINESS CREDIT INTELLIGENCE,

Plaintiff, Appellee,

v.

NATIONAL ASSOCIATION OF CREDIT MANAGMENT, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Lynch, Lipez, and Barron,
Circuit Judges.

Michael J. Lambert, with whom Sheehan, Phinney, Bass & Green, P.A. was on brief, for appellant.
Jack K. Merrill, with whom KSR Law was on brief, for appellee.

June 11, 2019

**BARRON**, **Circuit Judge**. This appeal arises out of a breach of contract suit between a national trade association of credit professionals, National Association of Credit Management, Inc. ("NACM"), and one of its regional affiliates, NACM-New England, Inc., which does business under the name Business Credit Intelligence ("BCI"). NACM appeals from the District Court's September 24, 2018 order granting injunctive and declaratory relief to BCI. We affirm in part, vacate in part, and remand in part the order of injunctive relief. We vacate and remand the declaratory judgment.

## I.

The following facts were found by the District Court and are not in dispute on appeal. NACM is a national trade association of commercial credit professionals that provides services, such as educational programs and legislative advocacy, to a series of regional "Affiliates." BCI is one of those Affiliates. Under the contract at issue, it has exclusive rights to provide credit services as a NACM Affiliate in the New England area.

Affiliates have customers, called "members," to whom they provide "core services." These include access to credit information, education on credit issues, and collection services. Members of Affiliates are also members of NACM. NACM also provides education and professional certification coursework to members.

Each Affiliate signs an identical contract with NACM. This appeal arises out of NACM's termination of the 2011 version of this agreement ("2011 Agreement") between BCI and NACM.

The 2011 Agreement provides, among other things, that NACM will provide services to Affiliates on certain terms and that NACM will not "disclose the specific membership list, or portions thereof, of any Affiliate to any person or entity" that provides "core services."  The 2011 Agreement permits either NACM or the Affiliate to terminate the agreement "for cause upon 90 days written notice to the other."

The 2011 Agreement was automatically renewed on October 28, 2016.  Thus, it would remain in effect until October 28, 2021 if not terminated for "cause."  On May 12, 2017, however, NACM sent the Chief Operating Officers of the Affiliates ("Affiliate COOs") a new agreement to be discussed at a meeting of the NACM Board of Directors in June of 2017 and at a meeting of the Affiliate COOs that same month.

Following those meetings, on June 14, 2017, Jon Flora, a member of the NACM Board, informed BCI that the NACM Board had approved a new Affiliate agreement.  NACM circulated the new agreement to Affiliate COOs on July 13, 2017, and informed them that the NACM Board had "voted to simultaneously terminate all NACM Affiliated Association Agreements . . . and adopt the new NACM Affiliation Agreement . . . on August 18[, 2017] at 12 noon

- 3 -

ET." Affiliates were required to return signed versions of the new agreement by that time "in order to maintain . . . Affiliate status." BCI was not happy with the new agreement's terms and refused to sign, thus risking disaffiliation upon termination of the 2011 Agreement.

On August 21, 2017, NACM's President, Robin Schauseil, emailed BCI. She informed BCI that seventeen of the twenty-two Affiliates had signed the 2017 Agreement and thus that there was "now a super majority of support for the 2017 Agreement." In that email, Schauseil indicated that the 2011 Agreement would terminate effective November 17, 2017, pursuant to Article IV, Section 4.D of the 2011 Agreement. That section provides that the agreement may be "terminated . . . for cause upon 90 days written notice." Schauseil further explained that "[d]uring the 90-day termination period, NACM will work towards ensuring that members . . . have access to NACM products, services and benefits after November 17th." In anticipation of the termination of the 2011 Agreement with BCI, NACM awarded BCI's territory to NACM Connect, the Affiliate for the Chicago area.

On November 8, 2017, BCI filed a complaint in Massachusetts state court against NACM. The complaint alleged, among other things, breach of contract. The case was removed a week later to the United States District Court for the District of

Massachusetts on the basis of diversity jurisdiction. See 28 U.S.C. § 1332.

The same day that the case was removed, BCI filed an emergency motion for a preliminary injunction and a hearing on that motion. BCI sought an injunction to require NACM to continue to abide by the terms of the 2011 Agreement, which it claimed that NACM had breached. NACM filed its opposition to that motion the following day.

On November 17, 2017 -- the date NACM intended to terminate the 2011 Agreement -- the District Court granted BCI's request for a preliminary injunction, after a hearing, and scheduled a "hearing on BCI's request for permanent injunctive relief" for December 5, 2017. This hearing was continued multiple times and then canceled after NACM filed an answer. NACM's answer included a demand for a jury trial.

A hearing was then set on the docket and was referred to as a "preliminary injunction" hearing in that docket entry. That hearing, in later docket entries, was referred to as a "Hearing on [Docket Entry] 21 Motion for Order re: Prior Preliminary Injunction."

BCI's "Motion for Order re: Prior Preliminary Injunction" asked the District Court to address what BCI argued was NACM's failure to follow the terms of the preliminary

injunction.  The hearing on that motion took place over four days -- specifically, April 17-19, 2018, and May 8, 2018.

On September 24, 2018, the District Court entered an order granting an injunction and a declaratory judgment to BCI. That injunction, in relevant part, ordered that the 2011 Agreement remained in effect and required NACM to "continue to honor all its obligations thereunder, including its obligation not to share BCI's membership list with any entity that provides core services."[1]  The District Court declared, "as a matter of law, that NACM did not properly terminate the 2011 Agreement and, therefore, did not have 'cause' to terminate BCI's affiliation agreement on November 17, 2017."  NACM timely appealed.

## II.

We start with NACM's challenge to the District Court's order of injunctive relief.  NACM contends that "[t]he text of the actual Order indicates the District Court issued a permanent injunction" because "there was no qualification [that the injunction] was limited to the pendency of the litigation."  From that premise, NACM argues that the District Court committed legal error by analyzing the case under the preliminary injunction

---

[1] The injunction does also prohibit NACM from "interfering with the business relationship between BCI" and another entity called United TranzActions, LLC, but NACM does not attack that portion of the injunction.  Accordingly, we need not address that aspect of the injunction.

standard, which requires only a showing of likelihood of success on the merits rather than actual success. Compare eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (setting forth the standard for a permanent injunction), with Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (same for a preliminary injunction).

Our review of a District Court's entry of an injunction is for abuse of discretion. Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell, 129 F.3d 1, 2-3 (1st Cir. 1997). But, here, the question at issue necessarily turns on the proper construction of the District Court's order, which presents a question of law that we review de novo. See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 572 U.S. 559, 563 (2014) ("[D]ecisions on questions of law are reviewable de novo . . . ." (internal quotation marks omitted)).

The text of the order of injunctive relief explains that it is "based on [the District Court]'s finding that NACM is required to continue to perform its obligations under the 2011 agreement during the pendency of any dispute between the parties." That temporal limitation is most naturally read to apply to the remainder of the order, as that language is immediately followed by "[i]t is hereby ordered that . . ." and the specific terms of the order -- namely, that NACM must comply with the 2011 Agreement.

So understood, the application of the preliminary injunction standard is less evidence of the District Court's error in selecting the proper standard for assessing whether to issue an injunction than of the District Court's intention to issue only a preliminary injunction. We therefore conclude that the District Court did not abuse its discretion in applying the preliminary injunction standard, because the injunction that it issued was a preliminary injunction.

NACM next contends that, even if the District Court issued a preliminary -- rather than a permanent -- injunction, the District Court still erred. NACM contends that the District Court did so by failing to find sufficient evidence of irreparable harm to support the injunction. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (holding that a party seeking a preliminary injunction "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest"). Our review of the District Court's irreparable harm finding is for abuse of discretion. See Johnson-Powell, 129 F.3d at 2-3.

The general rule in our Circuit is that "traditional economic damages can be remedied by compensatory awards, and thus do not rise to the level of being irreparable." Vaquería Tres

Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009) (citing P.R. Hosp. Supply, Inc. v. Bos. Sci. Corp., 426 F.3d 503, 507 (1st Cir. 2005)). Injunctive relief is permissible, however, "where the potential economic loss is so great as to threaten the existence of the movant's business." Id. (quoting Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1382 (6th Cir. 1995)).

As an initial matter, NACM argues that the District Court's analysis and explanation of the irreparable harm factor was so deficient as to constitute an abuse of discretion. But, the District Court, after hearing testimony from both parties, found "that BCI ha[d] demonstrated a serious risk of irreparable harm in the absence of an injunction." Moreover, the record shows that the District Court, after hearing nearly four days of testimony, concluded that "[d]isclosure of [BCI's] membership list to NACM Connect would" -- and thus not merely that such disclosure could -- "be devastating." (emphasis added). The District Court also found that BCI faced a "real threat of harm" from the disclosure, Matos ex rel. Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004), and the District Court did so after finding that, upon NACM's disclosure of lists of BCI members that are protected by the 2011 agreement to NACM Connect, BCI's competitor would have "all necessary information at its disposal to poach BCI's clients"; that NACM Connect has previously taken customers

away from BCI; that BCI operates on a "break even basis"; and that "a significant loss of members, . . . about 20%, could cause BCI to become insolvent" following testimony from BCI that "if we lost 20% of our members, we will be out of business."

Thus, at least with respect to the finding of irreparable harm that would flow from disclosure, we are able to discern what factors were weighed and "the [D]istrict [C]ourt's thought process[.]" Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997). We thus see no abuse of discretion based on a failure to make the basis for the finding known.

NACM also contends that the finding of irreparable harm was based on nothing "more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Charlesbank Equity Fund II, Ltd. v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). But, our review is for abuse of discretion, and the supportable findings that the District Court made concerning BCI's precarious financial state and the prospect of poaching that would follow from the violation of NACM's obligations with respect to disclosure suffice to refute this ground of objection with respect to the finding of irreparable harm concerning disclosure.

Insofar as NACM means to argue that the District Court's finding of irreparable harm is not sustainable because the record shows that BCI's membership list is not "confidential and

protectable," we disagree.  To support the contention, NACM points only to the compilation of conference attendance lists that include members and non-members and to its own provision of BCI's membership list to companies like UPS for purposes of member discounts.    That evidence, however, does not concern the disclosure of a complete membership list to a direct competitor in a manner that facilitates poaching.

NACM also contends that, absent a finding that NACM's "bare-bones" list of BCI's members constitutes "the specific membership list, or portions thereof, of any Affiliate" within the meaning of the 2011 Agreement, the District Court "could not have determined BCI succeeded (or was likely to succeed) on the merits of its claim that NACM's provision of its own list to a replacement Affiliate violated the 2011 Agreement and should be enjoined." And, NACM contends, the District Court made no such finding.

But, the District Court found that BCI was likely to succeed on its breach of contract claim not because of any disclosure that NACM had made prior to the termination of the 2011 Agreement but because BCI was likely to succeed in showing that NACM breached that agreement by failing to terminate the agreement "for cause."  And, insofar as NACM believes the scope of the injunction is unclear as to which lists it covers, we note that the relevant portion of the District Court's injunction is, by its terms, coextensive with the 2011 Agreement's non-disclosure

provision, which prohibits NACM from disclosing "the specific membership list, or portions thereof, of any affiliate." In any event, NACM may seek -- as BCI rightly points out -- clarification from the District Court to the extent it is not clear as to the scope of the injunction concerning disclosure.

There does remain NACM's challenge to the portion of the District Court's injunction that orders that the 2011 Agreement "remain in place" and that NACM "continue to honor all its obligations thereunder." NACM contends that the District Court did not make the requisite finding that irreparable harm would occur if NACM were not required to honor its obligations -- other than its obligation not to disclose certain membership lists -- under the 2011 Agreement. NACM argues that, for this reason, the injunction is overbroad.

Here, we agree with NACM that the record shows -- as BCI's counsel candidly acknowledged at oral argument -- that the District Court did not make any such finding of irreparable harm. Thus, we conclude that the District Court abused its discretion when it ordered as part of the injunctive relief that the 2011 Agreement "remain in place and [that the parties must] continue to operate in accordance with its terms and NACM shall continue to honor all its obligations thereunder." See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 40 (1st Cir. 2002) ("[I]njunctive relief should be no more burdensome to the defendant

than necessary to provide complete relief to plaintiffs and courts must closely tailor injunctions to the harm that they address." (alteration in original)(internal quotation marks and citations omitted)). We therefore vacate and remand the portion of the injunction that requires NACM to abide by any terms of the 2011 Agreement other than those prohibiting disclosure of "the specific membership list, or portions thereof" of BCI to any person or entity providing "core services."

## III.

We turn next to the various challenges that NACM makes to the declaratory relief that the District Court ordered. The District Court entered a declaratory judgment in favor of BCI after finding, "as a matter of law, that NACM did not properly terminate the 2011 Agreement and, therefore, did not have 'cause' to terminate BCI's affiliation agreement on November 17, 2017."

NACM first challenges the District Court's "cause" ruling by asserting that the record fails to support the District Court's findings regarding the process that NACM used to replace the 2011 Agreement. But, in doing so, NACM takes issue with the District Court's credibility determinations and factual findings without supplying an adequate basis for us to reject them. See United States v. 15 Bosworth St., 236 F.3d 50, 53-54 (1st Cir. 2001) (explaining the deferential standard of review of bench trials).

Moreover, the District Court did not ultimately base its conclusion that NACM lacked "cause" to terminate the 2011 Agreement on the findings that it made about the nature of the overall process that NACM used to attempt to replace that agreement with a new one. Rather, the District Court based that conclusion on a more particular finding: that NACM had failed to provide BCI with the kind of notice of its intention to do so that the 2011 Agreement required NACM to provide. Yet, insofar as NACM takes on that finding by the District Court, NACM merely sets forth a possible construction of a series of emails between NACM and BCI that the District Court reasonably construed differently. See id. at 53.

Separately, NACM does contend that the District Court erred in its ruling as to "cause," because it evaluated whether NACM had "cause" to terminate the agreement without properly applying Maryland law, which, NACM contends, controls under the 2011 Agreement's choice of law provision. In fact, NACM notes, the District Court failed to cite to any Maryland law in reaching its conclusion that the termination was not for "cause," as the District Court cited only to Massachusetts cases that applied Massachusetts law.

But, even if NACM were right to contend the District Court did commit this "legal error," we then would merely be required to vacate and remand the declaratory judgment so that findings could be made by a proper factfinder under the proper

- 14 -

legal standard.  Yet, NACM separately contends that the District Court erred in entering the declaratory judgment because it did so without submitting BCI's breach of contract claim to a jury, thereby depriving NACM of its right under the Seventh Amendment of the Federal Constitution to a have a jury make the requisite factual findings.  Accordingly, we may proceed straight to the Seventh Amendment issue, given that we agree with NACM on that score.

The Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend. VII.  An order of declaratory relief on a claim for breach of contract is "essentially legal [in] nature." Simler v. Conner, 372 U.S. 221, 223 (1963) (per curiam).  Thus, by entering the declaratory judgment on the breach of contract claim without a jury trial, the District Court violated NACM's Seventh Amendment rights.  Id.  Moreover, NACM was prejudiced thereby, for, as BCI's counsel acknowledged at oral argument, the District Court did not itself find -- let alone supportably so -- that no reasonable jury could find for NACM on the breach of contract claim.  See Fed. R. Civ. P. 50(a)(1).

- 15 -

BCI does contend that "NACM cannot now create a constitutional issue by insinuating . . . that it didn't know the merits of BCI's contract claim would be at issue in a permanent injunction hearing that by definition focuses on those merits." But, at oral argument, counsel for BCI, who was also counsel at the hearing in question, conceded that BCI was not sure at the start of that hearing whether it would be for a permanent or a preliminary injunction. And, NACM, at the start of that hearing, did object to having a "trial on the merits" -- insofar as that was the purpose of the hearing -- on the basis that it had demanded a jury trial.[2] Accordingly, pursuant to the Seventh Amendment, we vacate and remand the entry of the declaratory judgment on BCI's breach of contract claim.

**IV.**

The September 24, 2018 order of the District Court granting injunctive and declaratory relief to BCI is **vacated in part and affirmed in part**, and the matter is **remanded** for further proceedings consistent with this opinion. Each party shall bear its own costs.

---

[2] NACM also contends that the entry of the declaratory judgment violated its procedural due process rights. But, we need not reach this contention, as we vacate the entry of the declaratory judgment on Seventh Amendment grounds.