18-3363-ag
Marquez v. Garland

# United States Court of Appeals
# for the Second Circuit

August Term 2021

(Argued: August 20, 2021          Decided: September 7, 2021)

Docket No. 18-3363-ag

_____

JOSE ESTEBAN MARQUEZ,

*Petitioner*,

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

*Respondent*.

_____

Before:

RAGGI, CHIN, and PARK, *Circuit Judges*.

Jose Esteban Marquez was convicted in 2006 under New York's child-endangerment statute, N.Y. Penal Law § 260.10(1). In 2017, the United States initiated removal proceedings against him, citing as a ground of removal Marquez's "conviction of . . . a crime of child abuse, child neglect, or child abandonment." 8 U.S.C. § 1227(a)(2)(E)(i). In 2010, the BIA held that this provision included convictions under child-endangerment statutes for which "actual harm" is not an element of the crime. *See Matter of Soram*, 25 I. & N. Dec. 378, 381 (B.I.A. 2010). Marquez argues that this 2010 holding should not apply retroactively to his 2006 conviction and thus that there are no grounds for his removal. Marquez also applied for cancellation of removal and argues that the Immigration Judge erred by considering arrest reports in its denial of the application. We hold that (1) *Soram*'s holding applies retroactively, rendering Marquez removable, and (2) we lack jurisdiction to review the denial of Marquez's

cancellation of removal because the agency retains discretion to weigh the probative value of uncorroborated arrest reports. For these reasons, we DENY in part and DISMISS in remaining part.

JENNIFER VAIL (Janet E. Sabel, Adriene L. Holder, Judith Goldiner, Hasan Shafiqullah, Julie Ann Dona, *on the brief*), The Legal Aid Society, New York, NY, *for Petitioner*.

KATHERINE S. FISCHER (Bernard A. Joseph, Karen L. Melnik, *on the brief*), *for* Kristen Clarke, Assistant Attorney General, Civil Division, Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent*.

Park, *Circuit Judge*:

Jose Esteban Marquez, a native and citizen of the Dominican Republic, petitions for review of an order of the Board of Immigration Appeals ("BIA") upholding rulings of an Immigration Judge ("IJ") ordering Marquez's removal from the United States based on his conviction for a "crime of child abuse, child neglect, or child abandonment," 8 U.S.C. § 1227(a)(2)(E)(i), and denying his request for cancelation of removal, *see id.* § 1229b. *See In re Marquez*, A043-906-201 (B.I.A. Nov. 2, 2018); *see also In re Marquez*, A043-906-201 (Immig. Ct. N.Y.C. May 31, 2018); *In re Marquez*, A043-906-201 (Immig. Ct. N.Y.C. Nov. 29, 2017). In 2010, the BIA construed section 1227(a)(2)(E)(i) to include convictions under child-

endangerment statutes for which "actual harm" is not an element of the crime. *Matter of Soram*, 25 I. & N. Dec. 378, 381 (B.I.A. 2010). Marquez argues that this 2010 holding should not apply retroactively to his 2006 conviction under New York's child-endangerment statute, N.Y. Penal Law § 260.10(1), and thus, that there are no grounds for his removal. Marquez also argues that the IJ erred by considering arrest reports in its denial of his application for cancellation of removal. These arguments fail because (1) *Soram*'s holding applies retroactively, rendering Marquez removable; and (2) we lack jurisdiction to review the denial of Marquez's application for cancellation of removal because the agency retains discretion to weigh the probative value of uncorroborated arrest reports, *see* 8 U.S.C. § 1252(a)(2)(B)(i), (D). For these reasons, we deny in part and dismiss in remaining part.

## I. BACKGROUND

Marquez, a native and citizen of the Dominican Republic, was admitted to the United States as a lawful permanent resident in 1993. On March 24, 2017, the United States initiated removal proceedings against him, citing as grounds for removal four convictions in New York state court between 2006 and 2016.

The only conviction relevant to this appeal is Marquez's November 2006 conviction for endangering the welfare of a child in violation of New York Penal Law section 260.10(1).[1] Marquez was accused of engaging in sexual intercourse with a girl under the age of seventeen and was charged with two counts of rape in the third degree, one count of sexual misconduct, and one count of endangering the welfare of a child. Under a plea agreement, Marquez pled guilty to only the charge of child endangerment and received a sentence of three years' probation and a five-year order of protection.

Marquez initially moved to terminate the removal proceedings, arguing that the child-endangerment conviction does not render him removable under 8 U.S.C. § 1227(a)(2)(E)(i). The IJ (Mulligan, *I.J.*) denied the motion and sustained the charge of removability, explaining that a section 260.10(1) conviction under New York law is a categorical match with the federal removal ground of conviction for a "crime of child abuse, child neglect, or child abandonment." 8 U.S.C. § 1227(a)(2)(E)(i).

---

[1] Marquez's three other convictions were the result of (1) a New Jersey theft by unlawful taking charge, (2) a New York petit larceny charge, and (3) a New York possession of a controlled substance charge. *See In re Marquez*, A043-906-201, at 3 (Immig. Ct. N.Y.C. May 31, 2018). Marquez did not serve a term of imprisonment as a result of any of his convictions.

Marquez then applied for cancellation of removal. In his application, Marquez argued that he is "turning his life around," stressed his family ties in the United States (to which he and his siblings immigrated when he was eight years old), and noted the common hardships faced by those deported to the Dominican Republic. CAR at 271. The IJ denied the application, reasoning that "after balancing the nature of the Respondent's criminal record against the social and humane considerations he presents, . . . the adverse factors presented in this case clearly outweigh the positive ones." *In re Marquez*, A043-906-201, at 8 (Immig. Ct. N.Y.C. May 31, 2018). Specifically, although Marquez would face hardship by being removed to the Dominican Republic (where little of his family remains), "[h]is criminal record indicates . . . a history of anti-social behavior and ignores basic, fundamental social rules and norms." *Id.* at 7. The IJ drew these conclusions from Marquez's four convictions, his noncredible testimony attempting to explain those convictions, and reports of Marquez's twelve other arrests, including a report of alleged "violence and harassment against his daughter's mother." *Id.* at 6.

Marquez appealed to the BIA, which upheld both rulings and dismissed the appeal. First, the BIA affirmed the IJ's finding that Marquez "is removable as

charged" because "endangering the welfare of a child in violation of section [260.10(1)] is categorically a 'crime of child abuse, child neglect, or child abandonment.'" *In re Marquez*, A043-906-201, at 1 (B.I.A. Nov. 2, 2018). The BIA also agreed with the IJ, for the reasons set forth in his decision, that Marquez "did not meet his burden of proof to establish that he warranted cancellation of removal in the exercise of discretion," and that the equities favoring Marquez were "not sufficient to outweigh the adverse negative factors of record in this matter," particularly his criminal history. *Id.* at 1–2. Insofar as Marquez challenged the IJ's reliance on uncorroborated arrest reports when weighing his criminal history, the BIA concluded that the IJ "properly admitted the arrest reports and additional evidence regarding the respondent's offenses into the record for purposes of the discretionary analysis, and afforded them appropriate weight." *Id.* at 2.

Marquez filed a timely petition for review of his order of removal. We look to the underlying IJ decisions, in addition to the BIA's, because, although the BIA did not explicitly state that it was adopting the IJ's opinions, it affirmed the IJ's holdings and agreed with and adopted the IJ's reasoning in part. *See Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir. 2006) ("When the BIA agrees with the IJ's

conclusion that an asylum applicant is not credible and emphasizes particular aspects of the IJ's decisions, we review both the BIA's and the IJ's opinions.").

## II. DISCUSSION

A.   Removability

Marquez argues that New York's child-endangerment statute is not a categorical match for the "crime of child abuse" removal ground.  8 U.S.C. § 1227(a)(2)(E)(i).  This court rejected that argument in *Matthews v. Barr*, 927 F.3d 606 (2d Cir. 2019).  We acknowledged that the removal statute is ambiguous, and so we gave *Chevron* deference to the BIA's construction of a "crime of child abuse" in *Matter of Soram*.  *Id.* at 612–16.  There, the BIA interpreted "crime of child abuse, child neglect, or child abandonment" to include child-endangerment offenses where no actual harm occurs, as long as the statute requires a sufficient risk of harm to the child.  *See Soram*, 25 I. & N. Dec. at 381–83.  New York Penal Law section 260.10(1), which criminalizes "knowingly act[ing] in a manner *likely* to be injurious to the physical, mental or moral welfare of a child," is thus a categorical match.  *Id.* (emphasis added); *see Matthews*, 927 F.3d at 618–23.

In the alternative, Marquez argues that *Soram*'s construction of the "crime of child abuse" removal ground is a "new rule," and that it would be unfair to

apply it retroactively to his 2006 conviction pursuant to a guilty plea. Petitioner's Br. at 19. We disagree and hold that *Soram* applies retroactively.

Ordinarily, legislation operates prospectively while judicial holdings interpret existing law and thus operate retroactively. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 270–73 (1994); *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 94–95 (1993). Agencies, however, exercise both quasi-legislative and quasi-judicial powers. *See SEC v. Chenery Corp.*, 332 U.S. 194, 202–03 (1947). We thus look to the character of the agency action to determine whether it may have retroactive applications. "[T]he more an agency acts like a judge—applying preexisting rules of general applicability to discrete cases and controversies—the closer it comes to the norm of adjudication and the stronger the case may be for retroactive application of the agency's decision. But the more an agency acts like a legislator—announcing new rules of general applicability—the closer it comes to the norm of legislation and the stronger the case becomes for limiting application of the agency's decision to future conduct." *De Niz Robles v. Lynch*, 803 F.3d 1165, 1172 (10th Cir. 2015) (Gorsuch, *J.*).

The BIA proceeds by adjudication but sometimes announces new rules. *See, e.g.*, *Obeya v. Sessions*, 884 F.3d 442, 444–45 (2d Cir. 2018); *De Niz Robles*, 803 F.3d at

1180; *Velásquez-García v. Holder*, 760 F.3d 571, 584 (7th Cir. 2014). To distinguish prospective rules from retroactive decisions, we have considered five factors:

> (1) whether the case is one of first impression, (2) whether the new rule presents an abrupt departure from well-established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order places on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Lugo v. Holder*, 783 F.3d 119, 121 (2d Cir. 2015).

The government does not contest that the first and fourth factors favor Marquez's claim because the construction of a "crime of child abuse" is not an issue of first impression for the BIA here and removal from the United States would substantially burden Marquez. *Id.* Nonetheless, the most significant factors are the second and third factors, *see Obeya*, 884 F.3d at 445, which, along with the fifth factor, favor retroactivity here.

As to the second factor, we conclude that *Soram* merely "attempt[ed] to fill a void in an unsettled area of law" and thus should apply retroactively. *Lugo*, 783 F.3d at 121. Congress enacted the "crime of child abuse, child neglect, or child abandonment" removal ground in 1996 without specifically defining that term. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 350(a), 110 Stat. 3009-546, 3009-640. The BIA did not attempt to

9

define that provision in a precedential decision until 2008. *See Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503 (B.I.A. 2008). In *Velazquez-Herrera*, the BIA interpreted "'crime of child abuse' broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Id.* at 512. The BIA explained that,

> *[a]t a minimum*, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in prostitution, pornography, or other sexually explicit conduct; as well as any act that involves the use or exploitation of a child as an object of sexual gratification or as a tool in the commission of serious crimes, such as drug trafficking.

*Id.* (emphasis added).

A concurring board member pointed out that the definition was not clear as to "whether it extends to crimes in which a child is merely placed or allowed to remain in a dangerous situation, without any element in the statute requiring ensuing harm, *e.g.*, a general child endangerment statute." *Id.* at 518 n.2 (Pauley, *Board Member*, concurring). That board member also raised the related question whether a "crime of child abuse" was distinct from a crime of "child abandonment" or if a "crime of child abuse, child neglect, or child abandonment"

10

is a "unitary concept." *Id.* at 518. The majority acknowledged the importance of these questions but opted to "leave [them] for another day." *Id.* at 512 n.14.

The BIA answered those questions two years later in *Soram*, which considered whether a conviction under Colorado's child-endangerment statute, Colo. Rev. Stat. § 18-6-401(1)(a), is a categorical match with the federal "crime of child abuse, child neglect, or child abandonment" removal ground. *Soram* first clarified that *Velazquez-Herrera*'s broad definition of the "crime of child abuse" applies to the entire phrase "child abuse, child neglect, or child abandonment," which "denotes a unitary concept." 25 I. & N. Dec. at 381. *Soram* then explained that the definition of child abuse from *Velazquez-Herrera* was not limited to offenses "requiring proof of actual harm or injury to the child." *Id.* Instead, the BIA prescribed "a State-by-State analysis . . . to determine whether the risk of harm required by the endangerment-type language in any given State statute is sufficient to bring an offense within the definition of 'child abuse' under" 8 U.S.C. § 1227(a)(2)(A)(iii). *Id.* at 383. Conducting such a review in *Soram*, the BIA concluded that Colorado's statute was a match for section 1227(a)(2)(A)(iii) because it required a sufficient risk of harm—*i.e.*, "a *reasonable probability* that the child's life or health *will be* endangered." *Id.* at 385–86 (emphases in original).

11

Marquez argues that *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991 (B.I.A. 1999), articulated an "actual harm" standard for a "crime of child abuse" from which *Soram* departed. We are unpersuaded. Nowhere did *Rodriguez-Rodriguez* state that "child abuse" requires "actual harm." That case concerned a different removal ground—*i.e.*, the "aggravated felony" removal ground, 8 U.S.C. § 1227(a)(2)(A)(iii), which includes "sexual abuse of a minor," *id.* § 1101(a)(43)(A)—and a different legal issue—*i.e.*, whether "sexual abuse of a minor" requires physical contact. Nonetheless, Marquez submits that his argument is supported by the BIA's observation in that case that a "crime of child abuse," like the "sexual abuse of a minor," lacked a reference to a "particular statutory definition." *Id.* at 995–96. The BIA then noted that *Black's Law Dictionary* defines "child abuse" broadly to include abuse without physical contact, leading the BIA to conclude that "sexual abuse of a minor" should also be given a broad construction, not requiring physical contact. *Id.* But this definition states only that "cruelty" is an element of child abuse, not that "actual harm" is. Moreover, as Marquez admitted at oral argument, the observation is *dicta*.[2] Thus, because *Soram*

---

[2] Marquez also relies on the dissent in *Matthews* for the proposition that the rule announced in *Soram* represents an "abrupt departure from the B.I.A.'s longstanding precedent" for what constitutes "child abuse." Petitioner's Br. at 19. But the majority in *Matthews* did not

simply answered questions left open in *Velazquez-Herrera*, the BIA's first case to define a section 1227(a)(2)(E)(i) "crime of child abuse," the second *Lugo* factor favors the retroactive application of *Soram* here.

The third *Lugo* factor, which considers the extent to which a party relied on the prior rule, *see Lugo*, 783 F.3d at 121, also supports retroactive application. When Marquez pled guilty to child endangerment in 2006, the BIA had addressed the "crime of child abuse" ground for removal only in unpublished decisions or *dicta* that did not reach the question of whether "actual harm" was required.[3] Thus, Marquez can point to no rule upon which he could reasonably have relied when entering his 2006 guilty plea. *See Obeya*, 884 F.3d at 448 (stating that the "critical question is not whether a party actually relied on the old law, but whether

reach the retroactivity issue because the petitioner had not raised it. 927 F.3d at 623 n.13. Moreover, the dissent described the change in the law as "the dramatic evolution of the BIA's interpretation of the ambiguous federal law over the past thirty years," not an "abrupt departure" as we understand the standard. *Id*. at 624 (Carney, J., dissenting).

[3] *Compare In re Palfi*, A28-118-725, 2004 WL 1167145, at *2 (B.I.A. Feb. 6, 2004) (relying on another federal statutory provision defining child abuse as "the physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child"), *and In re Baez-Cazarez*, A91-043-562, 2004 WL 2952229, at *2 (B.I.A. Nov. 30, 2004) (same), *with In re Pacheco Fregozo*, AXX-XX7-885, 2005 WL 698590, at *1 (B.I.A. Feb. 9, 2005) ("[T]he term 'crime of child abuse' . . . cannot reasonably be interpreted as defining any discrete offense; on the contrary, we have indicated that it refers to any form of cruelty to a child's physical, moral or mental well-being." (internal quotation marks omitted)), *In re Manzano-Hernandez*, AXX-XX0-632, 2005 WL 698392, at *2 (B.I.A. Mar. 8, 2005) (same), *and In re Maltez-Salazar*, AXX-XX2-028, 2005 WL 952489, at *1 (B.I.A. Apr. 15, 2005) (similar).

such reliance would have been reasonable" (citation omitted)). Reliance on *Rodriguez-Rodriguez* would not have been reasonable, for the same reasons *Soram* was no departure from it. Therefore, the third *Lugo* factor favors the retroactive application of *Soram*.

The fifth *Lugo* factor considers "the statutory interest in applying a new rule despite the reliance of a party on the old standard." *Lugo*, 783 F.3d at 121. Here, the government asserts its "strong interest in maintaining the uniformity of immigration law." Resp't Br. at 27. As Marquez has not demonstrated reliance on an established rule, no interest counterbalances that of the government, and the fifth *Lugo* factor favors the retroactive application of *Soram*.

The second, third, and fifth *Lugo* factors thus weigh decisively against Marquez. *Soram*, which concluded that a "crime of child abuse" does not require actual harm, was not a departure from *Rodriguez-Rodriguez*, but an attempt to fill a void in an unsettled area of law. Hence, *Soram* applies retroactively. For these reasons, we deny the petition with respect to Marquez's challenge to his removability.

B.    Cancellation of Removal

A noncitizen like Marquez may have his removal cancelled if (1) "he meets the statutory eligibility requirements," and (2) the IJ "in his discretion decides . . . to grant . . . relief." *Rodriguez v. Gonzales*, 451 F.3d 60, 62 (2d Cir. 2006); *see* 8 U.S.C. § 1229(b).   Our review of the denial of cancellation of removal is limited to constitutional claims and questions of law.   *See* 8 U.S.C. § 1252(a)(2)(B)(i), (D); *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 39 (2d Cir. 2008).  For jurisdiction to attach, the petitioner's argument must be more than a "quarrel[] over the correctness of the factual findings or justification for the discretionary choices."  *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006).

Here, Marquez argues that the agency erroneously relied on arrest reports in rejecting parts of his testimony as not credible in contravention of its precedent in *In re Arreguin de Rodriguez*, 21 I. & N. Dec. 38 (B.I.A. 1995).  But *Arreguin de Rodriguez* did not create a per se rule against reliance on arrest reports;[4] rather, it

---

[4] Contrary to Marquez's representations, uncorroborated arrest reports are admissible in the cancellation-of-removal discretionary analysis.  *See Wallace v. Gonzalez*, 463 F.3d 135, 139 (2d Cir. 2006) ("Because the purpose of adjustments of status is to provide worthy aliens with special relief, we see no reason to prevent an IJ or the BIA from considering an applicant's anti-social conduct—whether leading to a conviction, a Youthful Offender Adjudication, or no legal judgment whatsoever—as an adverse factor in evaluating an application for discretionary relief."); *Matter of Teixeira*, 21 I. & N. Dec. 316, 321 (B.I.A. 1996) (finding it appropriate to admit

15

spoke to the *relative weight* to be given to uncorroborated arrest reports, which is unreviewable. *Arreguin de Rodriguez*, 21 I. & N. Dec. at 42; *see Guyadin v. Gonzales*, 449 F.3d 465, 468–69 (2d Cir. 2006) (holding, with respect to the denial of adjustment of status as a matter or discretion, that we "lack jurisdiction to review any claim that an IJ or the BIA erred in weighing the factors relevant to the grant or denial of [that relief]").

Marquez raises no constitutional claims or questions of law, so we dismiss his petition for want of jurisdiction insofar as it challenges the agency's discretionary decision to deny his application for cancellation of removal.

## III. CONCLUSION

For the reasons set forth above, the petition for review is denied in part and dismissed in remaining part.

---

"police reports concerning circumstances of arrest" for consideration in cases involving discretionary relief "because it bears on the issue of the respondent's *conduct* when he was arrested, and this in turn is germane to whether the respondent merits discretionary relief" (emphasis in original)); *In re Thomas*, 21 I. & N. Dec. 20, 23 (B.I.A. 1995) (holding that evidence of unfavorable conduct may be considered in discretionary determinations, even if it does not result in a conviction).