Arthur v. Garland

BIA
Tsankov, IJ
A031 447 509

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of November, two thousand twenty-one.

PRESENT:
> JOSEPH F. BIANCO,
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

GODFREY ALEXANDER ARTHUR,
> *Petitioner*,

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
> *Respondent*.

18-1514 (L),
20-3612 (Con)

---

FOR PETITIONER: STEWART R. GILSON (Joseph L. Sorkin, *on the brief*), Akin Gump Strauss Hauer & Feld LLP, New York, NY; Sharone S. Kaufman, The Legal Aid Society, New York, NY.

FOR RESPONDENT: SARA J. BAYRAM, Trial Attorney, Office of Immigration Litigation (John W.

Blakeley, Assistant Director, *on the brief*), *for* Brian M. Boynton, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of these petitions for review of Board of Immigration Appeals ("BIA") decisions, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petitions are **DENIED**.

Petitioner Godfrey Alexander Arthur, a native and citizen of Guyana, seeks review of an April 19, 2018 decision of the BIA affirming a November 29, 2017 decision of an Immigration Judge ("IJ"), ordering his removal, *In re Godfrey Alexander Arthur,* No. A031 447 509 (B.I.A. Apr. 19, 2018), *aff'g* No. A031 447 509 (Immigr. Ct. N.Y.C. Nov. 29, 2017), and a September 17, 2020 decision of the BIA, denying his motion to reopen, No. A031 447 509 (B.I.A. Sept. 17, 2020). We assume the parties' familiarity with the underlying facts and procedural history of the case, which we reference only as necessary to explain our decision to deny the petitions.

We have reviewed the IJ's decision as modified and supplemented by the BIA. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review questions of law *de novo*, *Matthews v. Barr*, 927 F.3d 606, 612 (2d Cir. 2019), findings of fact for substantial evidence, *see Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009), and the BIA's denial of a motion to reopen

2

for abuse of discretion, *Ke Zhen Zhao v. U.S. Dep't of Just.*, 265 F.3d 83, 93 (2d Cir. 2001).

Arthur filed two petitions for review, which we have consolidated for purposes of briefing in this Court. In the lead petition, Arthur challenges his removability based upon his 2009 conviction in New York state court for endangering the welfare of a child. In the second petition, Arthur contends that the BIA abused its discretion in denying his motion to reopen for ineffective assistance of counsel where counsel allegedly failed to adequately raise Arthur's mental health problems and competency issues. We address each petition in turn.

As a threshold matter, we deny the lead petition because (1) Arthur does not challenge the bases for the BIA's 2018 decision and (2) he did not exhaust his challenge to removability in his appeal to the BIA that culminated in that decision. *See Lin Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 118–22 (2d Cir. 2007).

In any event, even if exhausted, his challenge to removability fails on its merits and the BIA did not err by noting as much when it denied Arthur's motion to reopen. Arthur was ordered removed for "a crime of child abuse, child neglect, or child abandonment" under 8 U.S.C. § 1227(a)(2)(E)(i), based on his 2009 conviction for endangering the welfare of a child, in violation of New York Penal Law Section 260.10(1). In *Matter of Soram*, 25 I. & N. Dec. 378 (B.I.A. 2010), the BIA held that the "crime of child abuse"

3

definition under the removal statute broadly includes state child endangerment offenses that require a sufficient risk of harm to the child, even where no actual harm or injury occurs. *Id*. at 381-83. In 2019, in *Matthews v. Barr*, we concluded, as we previously held in *Florez v. Holder*, 779 F.3d 207 (2d Cir. 2015), that New York's child endangerment statute, as codified in Section 260.10(1), is a categorical match with the "crime of child abuse" under the removal statute. *Matthews*, 927 F.3d at 618–20. Therefore, under this precedent, Arthur's 2009 conviction under Section 260.10(1) is a removable offense.

Arthur nevertheless seeks to challenge removability by arguing that the BIA's definition of child abuse from the *Soram* decision in 2010, which was relied upon in *Matthews*, was a new rule that should not be retroactively applied to his 2009 guilty plea to endangering the welfare of a child. However, we recently rejected this precise argument in *Marquez v. Garland*, 13 F.4th 108 (2d Cir. 2021). More specifically, applying the five-factor test for assessing retroactivity set forth in *Lugo v. Holder*, 783 F.3d 119, 121 (2d Cir. 2015), we held that the BIA's definition of a crime of child abuse in *Soram* may be applied retroactively to a 2006 conviction under New York Penal Law Section 260.10(1). *Marquez*, 13 F.4th at 111-14.

Arthur contends that his case is distinguishable from *Marquez* because he entered his plea in 2009, not 2006, and, in so doing,

relied on the BIA's definition of child abuse articulated in 2008 in *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503, 512 (B.I.A. 2008). We find this argument unpersuasive and conclude, as we did when assessing this factor in *Marquez*, that Arthur has failed to show reasonable reliance. As we noted in *Marquez*, *Velazquez-Herrera* "left open" in 2008 whether a crime of child endangerment in which no proof of actual harm to the child is required constituted a crime of child abuse under 8 U.S.C. § 1227(a)(2)(E)(i), a question that the BIA answered only in 2010 in *Soram*. *Marquez*, 13 F.4th at 113–14. Thus, at the time of Arthur's guilty plea in 2009, there was no existing rule on which Arthur could have reasonably relied. *Cf. Obeya v. Sessions*, 884 F.3d 442, 448–49 (2d Cir. 2018) (finding a petitioner's reliance on an old rule reasonable where the old rule was established by "seven decades of BIA precedent, reinforced by this Court"). Accordingly, as we did for the petition in *Marquez*, we reject Arthur's challenge to his removability on retroactivity grounds and deny his first petition.

We also deny the second petition because, in reviewing the BIA's denial of Arthur's motion to reopen, we find no abuse of discretion. "An abuse of discretion may be found . . . where the Board's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say,

where the Board has acted in an arbitrary or capricious manner." *Ke Zhen Zhao*, 265 F.3d at 93 (internal citations omitted).

Arthur argued in his motion to reopen that he was deprived of a full and fair hearing because the IJ and his former counsel failed to act on the purported indicia of incompetence he displayed in his testimony and accordingly did not hold a competency hearing pursuant to *Matter of M-A-M-*, 25 I. & N. Dec. 474 (B.I.A. 2011). In particular, Arthur asserted that there were psychological evaluations diagnosing him with schizotypal personality disorder and noting that his "thought process obstructs his ability to communicate and process information." Certified Admin. Rec. at 421.

To state a due process claim, Arthur had to show both that he was deprived of a full and fair hearing and that the "outcome of his removal proceedings would have been . . . different" if not for the violation. *Debeatham v. Holder*, 602 F.3d 481, 486 (2d Cir. 2010). Similarly, to state a claim of ineffective assistance of counsel, he had to "allege facts sufficient to show [(a)] that competent counsel would have acted otherwise, and [(b)] that he was prejudiced by his counsel's performance." *Rabiu v. INS,* 41 F.3d 879, 882 (2d Cir. 1994) (internal quotation marks and citation omitted).

Noncitizens are presumed competent in removal proceedings and, unless there are indicia of incompetence, no further inquiry

6

is required. *Matter of M-A-M-*, 25 I. & N. Dec. at 477. "[T]he test for determining whether an alien is competent . . . is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence." *Id.* at 479. The BIA did not abuse its discretion in finding no indicia of incompetence sufficient to establish that the IJ or counsel erred by failing to hold or request a competency hearing. As the BIA found, the record reflects that, although Arthur was indirect at times, his testimony was responsive, and he demonstrated an understanding of the nature of the proceedings and the process of securing representation. *See id.* at 477–79; *cf. Matter of J-R-R-A-*, 26 I. & N. Dec. 609, 610 (B.I.A. 2015) (requiring a competency hearing where the applicant "was confused and frequently provided nonresponsive testimony before the [IJ]," testified he arrived in the United States in 2006 rather than 2012, said 2006 was "last year" at the time of the 2013 hearing, and "laughed inappropriately during the hearing").

Moreover, the BIA did not abuse its discretion in finding that Arthur failed to show that additional safeguards would have changed the outcome. *See Debeatham*, 602 F.3d at 486. Arthur's argument rests on his position that, had his counsel raised Arthur's mental health issues with the IJ and had he been provided

7

with a hearing, it would have resulted in the agency weighing his responses to questions regarding his criminal history differently. More specifically, Arthur persistently stated at the hearing that he did not participate in the crimes of which he was accused, despite having pled guilty to endangering the welfare of a child in lieu of rape, criminal sexual act, and sexual abuse charges. The IJ did not give this testimony "full weight" because it was self-serving and unsupported by any documentation in the record. 2020 Special App'x at 17. Moreover, in denying cancellation, the IJ noted that "[t]he respondent disavowed any criminal conduct in connection with that plea of guilty, despite the fact that he in fact does have a criminal conviction, and based on the charging document, appears to have engaged in conduct that he now disavows with a child under the age of 11 years old." 2020 Special App'x at 19. The IJ further concluded that "[Arthur] has failed to accept any responsibility for this criminal conduct, and this is a negative indication of any genuine rehabilitation." 2020 Special App'x at 19-20. The BIA also noted this testimony. *See* 2020 Special App'x at 11 ("Before the Immigration Judge, the respondent was provided with a reasonable opportunity to explain the criminal misconduct which served as the basis of his conviction. However, in lieu of admitting guilt, he unpersuasively denied any culpability. Discretionary relief is not appropriate where, as here, an alien declines to articulate a credible basis for the

8

criminal conviction which subjects him to removal from the United States."). Thus, the BIA concluded that, "[c]onsidering these circumstances, [it] agree[d] with the Immigration Judge's ultimate decision to deny the respondent's application for cancellation of removal as a matter of discretion." 2020 Special App'x at 11.

We find Arthur's assertion that exploration of his mental illness would have led the IJ and BIA to a different determination to be highly speculative. Even assuming, *arguendo*, that his mental illness hindered his ability "to respond to questions and to convey information in a goal directed and linear manner," Certified Admin. Rec. at 421, Arthur has failed to explain how that mental illness caused him to persistently disavow the criminal conduct to which he pled guilty and fail to express any remorse at that most basic level. On this record, there is no reason to believe that with more information about his mental illness the IJ or the BIA would have viewed any differently his complete failure to acknowledge guilt to the crime to which he pled guilty, and his corresponding lack of remorse for the crime.

To the extent that Arthur also argues that the agency might have found him eligible for asylum, withholding of removal, and relief under the Convention Against Torture based on his mental illness, we find that contention similarly unpersuasive. In support of his asylum claim, Arthur alleged only that there is stigma in Guyana against individuals suffering from mental

illness. Without more, Arthur cannot demonstrate that a hearing would have changed the outcome of his removal proceeding.

In short, Arthur has failed to show that if there had been additional exploration of his alleged mental illness by his counsel and the IJ, then the result of his hearing and removal proceeding would have been different. Accordingly, Arthur has not shown that the BIA's denial of his motion to reopen on this ground was "arbitrary or capricious." *Ke Zhen Zhao*, 265 F.3d at 93.

For the foregoing reasons, the petitions for review are **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

10